UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT BRUCE,

    Plaintiff,

v.

SHAMA CHAIKEN, et al.,

    Defendants.

No. 2: 15-cv-960 TLN KJN P

ORDER

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action is set for jury trial before the Honorable Troy L. Nunley on February 10, 2020. Pending before the court is plaintiff's motion for incarcerated witnesses to be brought to trial. (ECF No. 110.) Defendants oppose this motion, in part. (ECF No. 112.) For the reasons stated herein, plaintiff's motion is granted in part and denied in part.

II. Legal Standard

In determining whether to grant plaintiff's motions for the attendance of incarcerated witnesses, the court considers the following factors: (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted. Wiggins v. County of

1

Alameda, 717 F.2d 466, 468 n.1 (9th Cir. 1983); see also Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994) (district court did not abuse its discretion when it concluded the inconvenience and expense of transporting inmate witness outweighed any benefit he could provide where the importance of the witness's testimony could not be determined), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

III. Discussion

Plaintiff requests that inmates Perez and Harvey be brought to trial to testify on his behalf. Plaintiff alleges that inmates Perez and Harvey informed plaintiff that they would testify voluntarily.

A. Background

The proposed testimony of inmates Perez and Harvey is relevant to some of plaintiff's claims against defendants Clingman, Bobbala, Nangalama and Ikegbu.

Plaintiff alleges that defendant Clingman acted negligently and with the intent to inflict emotional distress when she denied his request to see a doctor on September 4, 2013. Plaintiff alleges that defendant Clingman acted negligently and with the intent to inflict emotional distress when she disregarded his claims of rectal tears made in his sick call request when she permitted him to be transferred to Pelican Bay State Prison ("PBSP") on September 10, 2013.

Plaintiff alleges that on September 5, 2015, defendant Bobbala acted negligently and with the intent to inflict emotional distress when he prescribed Colace and Milk of Magnesia for plaintiff. Plaintiff also alleges that defendant Bobbala acted negligently and with the intent to inflict emotional distress when he conditioned the prescription for Colace and Milk of Magnesia on plaintiff's agreement to resume eating.

Plaintiff alleges that defendant Nangalama violated the Eighth Amendment and state law, i.e., negligence and intentional infliction of emotional distress, when he prescribed a self-administered enema for plaintiff on September 7, 2013 because plaintiff was physically incapable of performing the enema. Plaintiff also claims that defendant Nangalama acted negligently and with the intent to inflict emotional distress when he prescribed the self-administered enema because plaintiff had fecal impaction. Plaintiff also alleges that defendant Nangalama acted

negligently and/or with the intent to inflict emotional distress when he failed to perform additional tests and failed to order adequate monitoring of plaintiff while he attempted to self-administer the enema. Plaintiff also alleges that defendant Nangalama violated the Eighth Amendment and state law, i.e., negligence and intentional infliction of emotional distress, when he approved plaintiff's transfer back to PBSP.

Plaintiff alleges that defendants Clingman, Bobbala and Nangalama denied him medical care in retaliation for his participation in a hunger strike and for complaints he made regarding medical care.

In relevant part, plaintiff alleges that defendant Ikegbu acted negligently and with the intent to inflict emotional distress when she failed to treat plaintiff's torn rectum on September 11, 2013 and September 24, 2013.

B. Inmate Perez

The declarations of inmates Perez and Harvey are attached to the pending motion. In his declaration, inmate Perez states,

> 2. From approximately August 23, 2013 until September 10, 2013, I was incarcerated at California State Prison at Sacramento. This prison is referred to as "New Folsom" by most inmates and CDCR staff. During the above dates, I was housed in the cell (#119) next door to Vincent Bruce, who was housed in cell # 118.
>
> 3. While in cell # 119, I was in a position to see or hear many of Bruce's interactions with medical staff when they came to the cell.
>
> 4. Most if not all of the inmates in our housing unit were participating in a mass hunger strike that began on approximately July 8, 2013, that at one point involved up to 30,000 inmates. Bruce and I were two of the participants. The hunger strike was a peaceful protest of CDCR's inhumane solitary confinement conditions and practices.
>
> 5. On or about September 4, 2013, the hunger strike concluded. However, Bruce indicated that he could not resume eating until he was treated for severe constipation. Bruce told a nurse named "Nurse Judy," who I believe was a supervising nurse, this information. The nurse expressed disbelief, and appeared angry Bruce would not eat. Bruce explained that he had a history of getting severely constipated on hunger strikes, and that he was sure he could not pass the stool without damaging his insides. The nurse said she would tell a doctor.
>
> 6. On September 5, 2013, Bruce was escorted to the makeshift clinic in the housing unit Bruce and I resided in for "Doctor's line." Bruce

3

was escorted to the doctor's line in waist chains, with handcuffs attached at the side.

7. Bruce told me upon his return that the doctor refused to treat him unless he resumed eating.

8. Nurse Judy came by after Bruce returned trying to talk him into eating. She told him she would make sure he received treatment if he started eating. She said that there was another doctor she would talk to about his requested treatment.

9. Sometime after Nurse Judy came by, two men came by in suits, and told Bruce that if he did not begin eating he would be moved to ASU. ASU is the most severe sensory deprivation unit at New Folsom.

10. Bruce spoke to Nurse Judge again and agreed to resume eating. Nurse Judge had Bruce brought out to a standing-room-only cage in our building so she could make sure he ate in front of her.

11. The next day Bruce complained to nurses that he was experiencing severe pain because of the severe constipation he suffered. He said the stool was too big and hard to pass. And pressure was building up in his abdomen and bowels.

12. Bruce was taken to see a doctor that day. When he returned Bruce told me they just wanted to give him pills and some self-enema bottles. He said they were not treating his condition as an emergency.

13. The next morning, September 7th, Bruce told he was in a lot of pain as he had to force the stool out which he said was twice as big as usual and hard like wood. He asked me about my stool after the hunger strike, which I told him was very hard too but in small pebbles. He said he was bleeding real bad from his backside.

14. That same morning, Bruce told one or two nurses that his rectum was torn and that he needed to see the doctor because he was bleeding "down there."

15. Bruce again requested to see the doctor the next day, on September 8th, asking the nurses who came by. Bruce also asked for medical requests, but the nurses would not bring him one to my knowledge.

16. On September 10, 2013, Bruce was put on a bus which staff told him was going back to Pelican Bay.

17. It is my understanding that a claim is being made that Bruce refused medical care. I did not see Bruce refuse medical care. I did see and hear him request that medical staff conduct his vitals at the makeshift clinic instead of standing in front of his cell. The nurses would tell him he would be brought to the makeshift clinic to have his vitals checked, but would not bring him. This occurred several times to Bruce. In my experience, correctional staff, including medical staff, who did not escort someone to a medical appointment

4

>would always blame the inmate, falsely claiming the inmate refused.
>
>18. The medical treatment at New Folsom was poor at best compared to other prisons. The nurses who were supposed to be observing us and taking notes would often walk quickly by without taking notes. They would never ask us questions about how we were feeling. They would sometimes not even walk at their scheduled times. They would get annoyed or angry when an inmate requested to have his vitals checked at the makeshift clinic, because they were lazy and wanted to do the vitals quickly at the front of the cell while the inmate was handcuffed and standing.
>
>19. It appeared to me that the medical staff were in particular annoyed or angry with Bruce. Bruce had filed multiple complaints on behalf of us inmates, complaining about the medical care and conditions at New Folsom that we hunger strikers were subjected to.

(Id. at 4-7.)

At the outset, the undersigned clarifies that "Nurse Judy," referred to in inmate Perez's declaration appears to be defendant Clingman.

A statement made out of court, which is offered for the truth of the matter asserted in the statement is hearsay. Fed. R. Evid. 801. Hearsay is not admissible, Fed. R. Evid. 802, unless it meets an exception. Fed. R. Evid. 803.

Much of the information in inmate Perez's declaration is hearsay. For example, inmate Perez's statement that on September 4, 2013 he heard plaintiff tell defendant Clingman that he could not resume eating until he was treated for constipation is hearsay.

In the pending motion, plaintiff admits that some of Perez's proposed testimony "may raise hearsay concerns," but argues that the proposed hearsay is admissible pursuant to one of the exceptions to the hearsay rule, such as the exception for a prior consistent statement.

The undersigned finds that inmate Perez's hearsay statements do not meet any hearsay exceptions. Regarding the exception for prior consistent statements, Federal Rule of Evidence 801(d)(1)(B) provides,

>(d) Statements That Are Not Hearsay.
>
>(1) A Declarant-Witness's Prior Statement: The declarant testifies and is subject to cross-examination about a prior statement, and the statement,
>
>\*\*\*\*

5

(B) is consistent with the declarant's testimony…

Fed. R. Evid. 801(d)(1)(B).

Inmate Perez's testimony regarding statements he heard plaintiff make is not admissible pursuant to Rule 801(d)(1)(B). Rule 801(d)(1)(B) applies to prior consistent statements made by the witness him or herself.

The undersigned cannot determine the relevance of inmate Perez's general statement that the medical treatment at New Folsom was poor because the nurses were not attentive. Inmate Perez does not identify the nurses or the inmates who allegedly received inadequate medical care. Inmate Perez also does not describe the allegedly poor medical care. The undersigned also cannot determine the relevance of inmate Perez's statement that the medical staff appeared annoyed or angry with plaintiff because inmate Perez does not identify the medical staff who appeared angry or annoyed.

Plaintiff argues that inmate Perez's statement that he did not see plaintiff refuse an exam is relevant to defendants' claim that plaintiff refused treatment. (ECF No. 110 at 2.) In support of this argument, plaintiff cites the findings and recommendations addressing defendants' summary judgment motion. (Id.) At the page of the findings and recommendations cited by plaintiff, the undersigned cited defendant Bobbala's records from September 5, 2013, stating that plaintiff refused a physical examination. (ECF No. 91 at 18.)

In his declaration, inmate Perez states that defendant Bobbala examined plaintiff in the medical clinic on September 5, 2013. Defendant Bobbala's records from September 5, 2013, also indicate that he examined plaintiff in the medical clinic. (ECF No. 37-6 at 5.) It is unclear how inmate Perez could have any personal knowledge regarding what occurred between plaintiff and defendant Bobbala in the medical clinic on September 5, 2013. See Fed. R. Evid. 602 (a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter). Accordingly, inmate Perez's testimony that plaintiff did not refuse an exam from defendant Bobbala on September 5, 2013, is not admissible.

Inmate Perez states that defendant Clingman appeared angry with plaintiff for not eating on September 4, 2013. Evidence that defendant Clingman was angry with plaintiff may support

plaintiff's state law claim that defendant Clingman denied his request to see a doctor on that date and his related retaliation claim. However, the value of this testimony to these claims is low. For this reason, and because plaintiff may testify regarding defendant Clingman's demeanor that day, inmate Perez's testimony that defendant Clingman was angry with plaintiff on September 4, 2013, does not substantially further the resolution of this case. Fed. R. Evid. 403 (court may exclude cumulative testimony); Lutz v. Glendale Union High School, 403 F.3d 1061, 1071 (9th Cir. 2005) (district courts have authority to limit the number of witnesses testifying about a particular fact).

For the reasons discussed above, plaintiff's request to call inmate Perez as a witness at trial is denied.

C. Inmate Harvey

Inmate Harvey's declaration states, in relevant part,

> 2. In the latter part of August 2013, I was transferred from Pelican Bay State Prison to California State Prison at Sacramento (New Folsom). I was placed on a bus with dozens of other inmates on a hunger strike, including prisoner Vincent Bruce. Bruce, myself and others had been on a hunger strike for at least six weeks when the transfer occurred. No medical staff accompanied us for the ten hour ride. Bruce and at least two other inmates became violently ill. Bruce began dry heaving and have severe dizzy spells. Another inmate passed out. No medical attention was provided.
>
> 3. Upon arrival we were placed in filthy cells without cleaning materials and denied personal property, and adequate clothing. Inmates were forced to use blankets as clothing (wrapped around them Indian style).
>
> 4. Bruce was placed in a cell below me and to my right. I was in cell 220 in the housing unit B8.
>
> 5. I am familiar with Doctor Nangalama. He was one of the senior or supervising doctors at New Folsom. He treated me on at least two occasions. Dr. Nangalama refused to order any tests or examine me for cardiac problems while treating me at New Folsom. Due to his inadequate medical care I suffered permanent heart damage during the three weeks I was under his care.
>
> 6. When the hunger strike ended on September 4, 2013, Mr. Bruce indicated to me he was not going to end his fast until he was provided treatment for his severe constipation. He said it was so big and hard he could feel it in his abdomen. As a designated representative of the hunger strike it was my responsibility to communicate with Mr. Bruce and staff let me speak to him.

7

> 7. Bruce told me the next day that the medical staff were refusing to provide any exams to confirm the severity of his condition. I passed this information on to some attorneys representing the hunger strikers.
>
> 8. At some point Bruce began eating again.
>
> 9. On or around September 10, 2013, Bruce, myself and other inmates were put on a bus that was returning to Pelican Bay State Prison. Bruce was in serious pain and discomfort for the ride back. Frequently wincing when the bus hit a rough part of the road. Bruce also was very tired and looked like he had not slept well for several days. Before we were put on the bus none of us were examined by any medical staff.

(ECF No. 110 at 8-9.)

The statements in inmate Harvey's declaration regarding the conditions of the bus ride from PBSP to CSP-Sac are not relevant to this action. The statements in inmate Harvey's declaration regarding the conditions of the cells upon their arrival at CSP-Sac are not relevant to this action. The statements in inmate Harvey's declaration regarding the alleged inadequate medical care he received from defendant Nangalama are not relevant to this action. Evidence of defendant Nangalama's alleged prior bad acts is also inadmissible pursuant to Federal Rule of Evidence 404(b)(1) (evidence of a "crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with their character).

Inmate Harvey's statement that plaintiff told him that medical staff were refusing to provide him with medical exams is hearsay. In addition, it is unclear how inmate Harvey has personal knowledge that medical staff were refusing to provide medical exams to plaintiff. Fed. R. Evid. 602 (witness must have personal knowledge of subject testimony). It is also unclear Inmate Harvey has personal knowledge that none of the inmates transferred back to PBSP were examined by medical staff. Id.

In their opposition, defendants state that they do not object to the presence of inmate Harvey at trial to the extent he proposes to testify regarding plaintiff's condition during the bus transport to PBSP on September 10, 2013. (ECF No. 112 at 7.) Inmate Harvey's testimony regarding his observations of plaintiff's condition is relevant to his claims that defendants

8

Clingman and Nangalama violated state and federal law by permitting him to be transferred to PBSP on that date. This testimony may also be relevant to plaintiff's claims that defendant Ikegbu failed to treat plaintiff's torn rectum.

The undersigned finds that inmate Harvey's testimony regarding his observations of plaintiff's condition on the bus to PBSP on September 10, 2013 would substantially further the resolution of plaintiff's claims. The security risks and expense of inmate Harvey's transportation do not outweigh the value of his testimony. The undersigned will later determine whether inmate Harvey may testify via video conference, which would reduce, if not eliminate, the security risks and expense of transporting him to court to testify.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for an order to have incarcerated witnesses brought to trial (ECF No. 110) is granted with respect to inmate Harvey and his testimony concerning plaintiff's condition during the bus transport to PBSP on September 10, 2013; plaintiff's motion is denied in all other respects.

Dated: August 21, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Br960.wit